**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

KIM ELIZABETH HARWELL,

    Plaintiff

v.

WESTCARE NEVADA, INC., et. al,

    Defendants

Case No.: 2:25-cv-00689-APG-BNW

**Order Granting in Part Defendants'
Motion to Dismiss and Granting Plaintiff
Leave to Amend Complaint**

ECF No. 15

Pro se plaintiff Kim Harwell was a resident at defendant WestCare Nevada Inc.'s treatment facility and received treatment for her mental health there. After several incidents with a hostile roommate, Harwell reported the roommate's behavior to WestCare's staff. Harwell alleges that instead of addressing the incidents, the defendants retaliated against her because of her reports. Harwell brings several claims against WestCare and several of its employees: discrimination under § 504 of the Rehabilitation Act; retaliation under § 504 of the Rehabilitation Act; negligence; a violation of Title II of the Americans with Disabilities Act (ADA); retaliation under Nevada Revised Statutes (NRS) § 651.080; deprivation of rights under 42 U.S.C. § 1983; and supervisory negligence under § 1983. Amongst other remedies, she seeks declaratory relief that the defendants violated the Rehabilitation Act, injunctive relief requiring policy changes at WestCare, compensatory damages under the Rehabilitation Act, damages for gross negligence, and attorney's fees. The defendants move to dismiss or for a more definite statement.

I dismiss Harwell's § 504 discrimination claim against all defendants and § 504 retaliation claim against all defendants except Rhonda Davisson while granting Harwell leave to

amend.  I also dismiss the claims and relief that Harwell concedes should be dismissed.  I grant the defendants' motion for a more definite statement regarding Harwell's negligence claim and order her to state which specific defendants she sues for negligence.

## I.    BACKGROUND[1]

Harwell is a veteran of the U.S. military diagnosed with service-connected PTSD and anxiety. ECF No. 11 at 2.  From July to December 2024, she resided at a residential treatment facility of WestCare, a non-profit that provides mental health treatment. *Id.* at 3, 7.

Harwell shared a room with another WestCare client, Bonnie Manuel. *Id.* at 4.  In November 2024, Manuel hit the wall of their room, yelled at Harwell for keeping a heater on, and said "I am turning this motherfucking heat off." *Id.* at 11.  Manuel appeared intoxicated to Harwell. *Id.*  This triggered Harwell's anxiety. *Id.*  Harwell left their room and went to the facility's front lounge. *Id.* at 11-12.  Manuel followed, confronted, and continued cursing at her which further exacerbated Harwell's anxiety. *Id.* at 12.  At one point, Manuel charged at Harwell but did not hit her. *Id.*

Harwell reported Manuel's behavior to defendant Rhonda Davisson, a case manager at the facility. *Id.* at 4, 12.  Harwell told Davisson that she "d[id] not want to go back in the bedroom with [Manuel]" and tried to tell her about the incident. *Id.* at 12-13.  However, Davisson continuously interrupted Harwell, and Harwell did not feel like Davisson got the full story. *Id.* at 13.  Davisson said she would speak to Manuel, and their meeting ended. *Id.*  But Davisson did not move Manuel or Harwell from their room, which kept Harwell's "body and mind . . . in panic mode." *Id.*

---

[1] All facts are taken from Harwell's First Amended Complaint. ECF No. 11.

A few days later, Harwell reported to Davisson that another of Harwell's roommates had not flushed her feces in their shared toilet. *Id.* at 14. Davisson demanded that Harwell clean the toilet, which Harwell felt was in retaliation for her reporting Manuel's behavior. *Id.*

Later, during the evening of December 3, 2024, Manuel again entered their shared room yelling profanities about her misplaced belongings and started playing music loudly, seemingly intoxicated. *Id.* This caused Harwell to go into shock. *Id.* at 15. Harwell then texted Davisson about how Manuel's behavior was scaring her and about Harwell's anxiety and PTSD. *Id.* When Davisson did not respond, Harwell left the room and found defendant Melinda Minor, a WestCare staff member, and another WestCare staff member to intervene. *Id.* at 4, 15. They told Manuel to stop cursing, but they could not get Manuel to calm down. *Id.* at 15. Manuel began yelling at Harwell, "fuck her," "[s]he just want [sic] me to be kicked out," and "[w]hat are you going to do about it bitch." *Id.* at 15. One staff member had to physically step in between Manuel and Harwell. *Id.* Davisson then entered the room, got Manuel to turn off her music, at which time all WestCare staff members left. *Id.* at 15-16.

Manuel then again yelled at Harwell, who was "[s]till in a state of shock." *Id.* at 16. Harwell ran out of the room and told the WestCare staff members, but Davisson dismissed her concern saying that Manuel "was not talking to [Harwell]." *Id.* Harwell asked if she could go into the facility's dayroom, and Davisson allowed her to. *Id.* Soon after, Davisson told Harwell to sleep in the dayroom that night. *Id.* Harwell did not want to, but Davisson insisted, stating it was "because [Harwell] was more reasonable than [Manuel]." *Id.* Harwell again felt like she was being retaliated against for reporting Manuel to the WestCare staff. *Id.*

The next few days, Harwell had increased anxiety, PTSD, depression, and hallucinations due to the incident with Manuel. *Id.* Harwell texted Davisson to ask to meet with defendant Irma

Magrdichian, WestCare's director of residential services, but Davisson did not respond. *Id.* at 1, 17. Harwell went to the emergency room on December 8, 2024 due to her hallucinations and an oncoming panic attack, and she was admitted into the psychiatric ward the next day. *Id.* at 17-18. After being released from the hospital, she left WestCare's residential facility. *Id.* at 18. Prior to the incidents with Manuel, Harwell was successfully managing her mental health through classes and therapy without taking medication. *Id.*

## II.    DISCUSSION

In considering a motion to dismiss, I take all well-pleaded allegations of material fact as true and construe them in a light most favorable to the non-moving party. *Kwan v. SanMedica Int'l*, 854 F.3d 1088, 1096 (9th Cir. 2017). However, I do not "assume the truth of legal conclusions merely because they are cast in the form of factual allegations." *Navajo Nation v. Dep't of the Interior*, 876 F.3d 1144, 1163 (9th Cir. 2017).

To defeat a motion to dismiss, a plaintiff must make sufficient factual allegations to establish a plausible entitlement to relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007). Such allegations must amount to "more than labels and conclusions, [or] a formulaic recitation of the elements of a cause of action." *Id*. at 555. Instead, the complaint must include "a short and plain statement of the claim" that shows the plaintiff "is entitled to relief" and gives the defendants "fair notice of what the claim is and the grounds upon which it rests." *Id*. at 555 (simplified). I construe pro se pleadings liberally. *Draper v. Rosario*, 836 F.3d 1072, 1080 (9th Cir. 2016).

////

////

////

4

**A. I do not consider Harwell's response to the defendants' reply in support of their motion to dismiss.**

After the defendants filed their reply in support of their motion to dismiss, Harwell filed a second response to address the points raised in the defendants' reply. ECF No. 21. She did not move for leave to file a surreply. "Surreplies are not permitted without leave of court; motions for leave to file a surreply are discouraged." LR 7-2(b). Accordingly, I will not consider Harwell's response to the defendants' reply.

**B. I dismiss Harwell's claims that she consented to be dismissed.**

Harwell consents to dismissing several of her causes of action and claims for relief. The defendants moved to dismiss Harwell's claims under Title II of the ADA, for deprivation of rights under § 1983, for supervisory negligence under § 1983, and under *Monell* (to the extent she raises such claim[2]) because those claims are only available against public entities and state actors. WestCare is a non-profit, private organization. ECF No. 11 at 3. The defendants also moved to dismiss Harwell's claim under NRS § 651.080 because that is a criminal statute that does not provide a private right of action. In her response to the motion to dismiss, Harwell "withdr[ew]" all of these claims. ECF No. 17 at 2. Therefore, I dismiss them.

The defendants also move to dismiss Harwell's request for attorney's fees because she is proceeding pro se, and her request for compensatory damages for gross negligence because she only alleges negligence in her complaint. Harwell also withdrew these requests in her response, so I dismiss them as well.

---

[2] Harwell cites to *Monell v. Department of Social Services*, 436 U.S. 658 (1978) in her ADA claim in her complaint. ECF No. 11 at 5.

5

Finally, the defendants argue that Harwell has not set forth the basis to receive declaratory or injunctive relief under the Rehabilitation Act.  Harwell responded that she "does not seek injunctive or declaratory relief under the . . .  Rehabilitation Act." ECF No. 17 at 10. Therefore, I will dismiss her request for such relief in her complaint.

**C.  I dismiss Harwell's claim for discrimination under § 504 the Rehabilitation Act but give her leave to amend.**

The defendants argue that Harwell has failed to state a claim for discrimination under § 504 of the Rehabilitation Act because she has not alleged facts that any discrimination she faced was solely because of her disability.  They also argue that the complaint is not clear which defendant is being sued for discrimination.[3]  Harwell responds that the defendants discriminated against her by denying her access to grievance procedures after Manuel triggered her panic attacks, forcing her to clean the toilet after her roommate used it, and forcing her to sleep in the dayroom.

Section 504 of the Rehabilitation Act states that "[n]o otherwise qualified individual with a disability . . .  shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance . . . ." 29 U.S.C. § 794(a).  To state a discrimination claim under this section, "a plaintiff must show: (1) [s]he is an individual with a disability; (2) [s]he is otherwise qualified to receive the benefit; (3) [s]he was denied the benefits of the program solely by reason of [her] disability; and (4) the program receives federal financial assistance." *Weinreich v. L.A. Cnty. Metro. Transp. Auth.*, 114 F.3d 976, 978 (9th Cir. 1997) (simplified).

---

[3] Harwell's complaint did not identify which named defendants were being sued under which claims.

6

The defendants do not contest that Harwell's anxiety and PTSD diagnoses constitute a disability nor that they receive federal financial assistance.

When there is another, non-disability reason why a plaintiff was denied the benefit of a program, her disability is not the sole reason for denial. *See id.* at 979.  In *Weinreich*, a disabled plaintiff raised a § 504 discrimination claim after he was denied access to a public transportation's reduced fare program designed for disabled individuals. *Id.* at 978.  The defendants refused to renew his eligibility for the program because he did not provide updated medical information recertifying his disability, which he failed to do because he could not afford to pay a doctor to recertify his disability. *Id.*  The Ninth Circuit found that the plaintiff's "financial circumstances, not [ ] his medical disability," caused his exclusion from the reduced fare program and thus his disability was not the sole reason for his exclusion. *Id.* at 979.

Similarly here, there are either non-disability reasons for the alleged discrimination Harwell faced, or Harwell does not allege any reason at all why she faced the discrimination. Harwell first alleges she was discriminated against when she was denied access to grievance procedures after Manuel triggered her panic attacks.  It is unclear what grievance procedures Harwell refers to because she does not allege that WestCare had a formal complaint process for residents or that she asked to submit a formal grievance.  She alleges that she "felt unheard" when explaining the November Manuel incident to Davisson and that Davisson did not respond when Harwell texted Davisson asking to speak to WestCare's director of residential services during the December Manuel incident. ECF No. 11 at 13.  Assuming Harwell refers to these incidents, she does not allege any reason why Davisson kept interrupting Harwell during their meeting about the November Manuel incident, why Davisson did not respond to Harwell's text, or why any WestCare employees did not offer Harwell the opportunity to submit a formal

7

grievance. Because she does not allege these actions were solely because of her disability, this fails to state a claim for discrimination under § 504.

Harwell also alleges that she was discriminated against when Davisson forced her to clean the toilet and when she had to sleep in the public dayroom. But she does not allege the defendants forced her to do so because of her PTSD or anxiety. In fact, she alleges she felt like both actions were retaliation for reporting Manuel. Because Harwell has not alleged that she was forced to clean the toilet or sleep in the dayroom solely because of her disability, and in fact alleges it was because of retaliation, she fails to state a § 504 discrimination claim. Therefore, I dismiss Harwell's discrimination claim under § 504 of the Rehabilitation Act.

**D. I dismiss Harwell's claim for retaliation under § 504 of the Rehabilitation Act against most but not all of the defendants.**

The defendants argue that Harwell has failed to state a claim for retaliation under the Rehabilitation Act because she has not alleged she participated in any protected activity or suffered an adverse action. They also argue that the complaint is not clear which defendants that Harwell brings this claim against.

Under § 504 of the Rehabilitation Act, a retaliation claim "requires a plaintiff to show: (1) involvement in a protected activity, (2) an adverse . . . action and (3) a causal link between the two." *Coons v. Secretary of U.S. Dep't of Treasury*, 383 F.3d 879, 887 (9th Cir. 2004) (simplified); *see also Davis v. Clark Cnty. Sch. Dist.*, No. 2:11-cv-01896-KJD-NJK, 2013 WL 497598, at *3 (D. Nev. Feb. 6, 2013) (analyzing a Rehabilitation Act retaliation claim in a non-employment context). The Rehabilitation Act protects "any individual who has been intimidated, threatened, coerced, or discriminated against for the purpose of interfering with protected rights under . . . the Rehabilitation Act." *Barker v. Riverside Cnty. Off. of Educ.*, 584

F.3d 821, 825 (9th Cir. 2009) (simplified); *Golden v Mayorkas*, No. 24-6209, 2025 WL 2955227, at *1 (9th Cir. Oct. 20, 2025) (protected activity includes "assertion of [one's] rights under the Rehabilitation Act"). A plaintiff asking for "reasonable accommodations for [her] alleged disability" is protected activity. *Coons*, 383 F.3d at 883, 887 (concluding the plaintiff engaged in protected activity by requesting reasonable accommodations through his doctor that the plaintiff not have to "excessive[ly] travel" for work); *Weixel v. Board of Educ. of City of N.Y.*, 287 F.3d 138, 142, 149 (2d Cir. 2002) (concluding the plaintiffs had engaged in protected activity by seeking reasonable accommodations at school, including that the plaintiff's disabled daughter not have to climb stairs to attend class and that she be allowed to lie down at school if she felt sick). An adverse action is "any action reasonably likely to deter [the plaintiff or others] from engaging in protected activity." *Pardi v. Kaiser Found. Hosps.*, 389 F.3d 840, 850 (9th Cir. 2004) (simplified) (interpreting "adverse action" for a retaliation claim under the Americans with Disabilities Act (ADA)[4]).

Harwell alleges the defendants retaliated against her by forcing her to clean the toilet after she engaged in protected activity by reporting Manuel's behavior after the November incident. But even construing her complaint liberally, this is not a plausible allegation of a protected activity. Harwell told Davisson that she "d[id] not want to go back in the bedroom with [Manuel]." ECF No. 11 at 12-13. But she does not allege that she cited her mental health diagnoses as the reason for this request, so Harwell fails to plausibly allege she asked for a reasonable accommodation for her disabilities. *See id.* Harwell does not cite to any law

---

[4] In the Ninth Circuit, "courts have applied the same analysis to claims brought under both" the Rehabilitation Act and the ADA, "[b]ecause the ADA was modeled on section 504 of the Rehabilitation Act." *Boose v. Tri-County Metro. Transp. Dist. of Or.,* 587 F.3d 997, 1001 n.5 (9th Cir. 2009) (quotation omitted).

otherwise holding that complaining about a roommate's behavior in a treatment facility is asserting one's rights under the Rehabilitation Act.

Harwell also alleges she engaged in a protected activity when she reported Manuel's behavior after the December incident. Here, she plausibly alleges she asked for a reasonable accommodation for her disability. She cited to her mental health diagnoses when texting Davisson about how Manuel's behavior was scaring her. She then asked Davisson if she could go into the dayroom and away from Manuel. This is a plausible allegation of a reasonable accommodation for her disability, to have space away from the person triggering her PTSD and anxiety. Later, Davisson told Harwell to sleep in the dayroom that night over Harwell's objections, a plausible allegation of an action that is reasonably likely to deter Harwell from asking for reasonable accommodations in the future.

Harwell has not explicitly stated which named defendants she is suing for retaliation. But construing her complaint liberally, she has stated a claim for retaliation against Davisson for forcing her to sleep in the dayroom after the December incident with Manuel. Therefore, I dismiss her § 504 retaliation claim against WestCare, Irma Magrdichian, Leo Magrdichian, and Minor, but I do not dismiss the claim against Davisson.

The defendants also argue that compensatory damages are not available for Harwell's § 504 retaliation claim because she has not shown they acted with discriminatory intent. Because Harwell concedes she no longer seeks declaratory or injunctive relief under the Rehabilitation Act, compensatory damages is the only remaining remedy she pursues for this claim. The Ninth Circuit has stated that "compensatory damages are not available under . . . § 504 absent a showing of discriminatory intent." *Ferguson v. City of Phoenix*, 157 F.3d 668, 674 (9th Cir. 1998). But *Ferguson* and the other Ninth Circuit cases cited by the defendants

10

apply this standard only to § 504 claims of discrimination, not retaliation. *See, e.g., id.* at 670; *Duvall v. Cnty. of Kitsap*, 260 F.3d 1124, 1138 (9th Cir. 2001); *Lovell v. Chandler*, 303 F.3d 1039, 1052, 1056 (9th Cir. 2002); *Bax v. Doctors Med. Ctr. of Modesto, Inc.*, 52 F.4th 858, 864, 866 (9th Cir. 2022). Additionally, there is a split among district courts in the Ninth Circuit on whether compensatory damages are available for § 504 retaliation claims, which the defendants do not raise. *Caldwell v. Del Toro*, No. C19-6095 BHS, 2022 WL 1719132, at *1 (W.D. Wash. May 27, 2022) (citing cases); *Walker v. City of Pocatello*, No. 4:15-cv-00498-BLW, 2020 WL 4043487, at *1, 3 (D. Idaho July 16, 2020). Because the defendants have not adequately addressed the availability of compensatory damages for Harwell's § 504 retaliation claim, I decline to dismiss her request for damages at this time. The defendants may re-raise this argument in a subsequent motion to dismiss after Harwell files an amended complaint or after the deadline for her to do so passes. If the defendants choose to re-raise this argument, they must analyze whether the Rehabilitation Act makes compensatory damages available for retaliation claims and whether *Ferguson* set forth the correct standard to determine their availability.[5]

**E. I do not dismiss Harwell's negligence claim but order her to state which defendants she sues for negligence.**

Under Nevada law, a negligence claim "requires that the plaintiff satisfy four elements: (1) an existing duty of care, (2) breach, (3) legal causation, and (4) damages." *Turner v.*

---

[5] In its reply in support of its motion to dismiss, the defendants argue for the first time that Harwell's damages are "essentially for emotional distress," which are unavailable for civil claims under the Rehabilitation Act. ECF No. 19 at 11 (citing *Cummings v. Premier Rehab Keller, PLLC*, 596 U.S. 212 (2022)). Raising new arguments in a reply brief is improper because it deprives the opposing party of "an opportunity to respond." *Tovar v. U.S. Postal Serv.*, 3 F.3d 1271, 1273 n.3 (9th Cir. 1993); *Carstarphen v. Milsner,* 594 F. Supp. 2d 1201, 1204 n.1 (D. Nev. 2009). Accordingly, I "need not consider arguments raised for the first time in a reply brief," and I do not do so here. *Zamani v. Carnes,* 491 F.3d 990, 997 (9th Cir. 2007).

*Mandalay Sports Ent., LLC*, 180 P.3d 1172, 1175 (Nev. 2008) (en banc).  "A duty is defined as an obligation, to which the law will give recognition and effect, to comport to a particular standard of conduct toward another." *Merluzzi v. Larson*, 610 P.2d 739, 742 (Nev. 1980), *overruled in part on other grounds by Smith v. Clough*, 796 P.2d 592 (Nev. 1990).  "The question of whether the defendant owes the plaintiff a duty of care is a question of law." *Sparks v. Alpha Tau Omega Fraternity, Inc.*, 255 P.3d 238, 244 (Nev. 2011) (simplified).

Read liberally, Harwell's complaint plausibly states a claim for negligence.  Generally, she alleges that "[d]efendants owed [Harwell] a duty of reasonable care" and that WestCare owed her a duty "to protect her, as a disabled resident, from foreseeable harm." ECF Nos. 11 at 6; 17 at 8.  She also alleges that Davisson and the WestCare staff "failed to provide [her] a safe and hostile-free environment from another client." ECF No. 11 at 11.  The defendants have not addressed whether a residential behavioral health facility owes a duty to protect a resident from another resident.  Construing Harwell's complaint liberally, she plausibly alleges that some defendants owed her a duty to protect her from other residents who foreseeably could cause her harm.  She further alleges that the defendants breached this duty by failing to properly intervene during and after the November and December incidents with Manuel.  Finally, she alleges this caused her to be hospitalized due to exacerbating her anxiety and PTSD, a cognizable harm.[6]  Thus, she has sufficiently stated a claim for negligence, and I deny the defendants' motion to dismiss the claim.

---

[6] The defendants argue Manuel's conduct, though rude, does not impose liability on them for negligence because "persons must necessarily be expected and required to be hardened . . . to occasional acts that are definitely inconsiderate and unkind." ECF No. 15 at 7-8 (quoting *Maduike v. Agency Rent-A-Car*, 953 P.2d 24, 26 (Nev. 1998).  But *Maduike* cites that standard for an intentional infliction of emotional distress claim and is thus inapplicable to Harwell's negligence claim.

However, the complaint is unclear about which defendants Harwell is suing for negligence.  In different parts of her complaint, she alleges that the "[d]efendants," WestCare, Davisson, or unnamed WestCare staff had or breached a duty to her. ECF No. 11 at 6, 11.  The defendants move for a more definitive statement under Federal Rule of Civil Procedure (FRCP) 12(e) to identify the "who, what and where" of each cause of action. ECF No. 15 at 15.  "A party may move for a more definite statement of a pleading to which a responsive pleading is allowed but which is so vague or ambiguous that the party cannot reasonably prepare a response." FRCP 12(e).  "The rule is aimed at unintelligibility rather than lack of detail and is only appropriate when the defendant cannot understand the substance of the claim asserted." *Underwood v. O'Reilly Auto Parts, Inc.*, 671 F. Supp. 3d 1180, 1188 (D. Nev. 2023) (simplified).  Because the defendants do not substantively know which defendants Harwell brings her negligence claim against, I grant their motion for a more definite statement.  Harwell must file an amended complaint stating which specific defendants she is suing for negligence.  If she does not do so, I will dismiss the negligence claim. *See* FRCP 12(e).

**F.  I warn the parties against citing non-existent caselaw in their filings.**

It appears that Harwell used generative AI software to prepare her complaint as she cites a non-existent case in support of her negligence claim.  Specifically, she states the following: "See *Estate of Saila v. Circle K Corp.*, 135 Nev. 545, 552, 353 P.3d 541, 546 (Nev. Ct. App. 2019) (imposing liability for systemic failures to protect vulnerable individuals)." ECF No. 11 at 6.  The citation 135 Nev. 545 goes to *State of Nevada v. Inzunza*, 135 Nev. 513, 454 P.3d 727 (Nev. 2019).  The citation 353 P.3d 541 goes to *Dutton v. City of Midwest City*, 353 P.3d 532 (Okla. 2015).  I could not find a case titled *Estate of Saila v. Circle K Corp.*

13

When a party presents a filing to a court, such as a motion, the party certifies "that to the best of the [party's] knowledge, information and belief, formed after an inquiry reasonable under the circumstances . . . the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law." FRCP 11(b)(2).  This imposes an "affirmative duty of investigation . . . as to law . . . before motions are filed." *Golden Eagle Distrib. Corp., v. Burroughs Corp.*, 801 F.2d 1531, 1536 (9th Cir. 1986).  This extends to attorneys and pro se litigants alike. FRCP 11(b).

There has been a rise in fake authority cited in briefs, usually as the result of using generative AI software, like ChatGPT, to draft pleadings or other court filings. *Johnson v. MINI of Las Vegas*, No. 2:25-cv-00725-APG-EJY, 2025 WL 2718525, at *3 (D. Nev. Sept. 24, 2025). Generative AI often invents fake cases and legal precedent in its drafting, and using it is no excuse to not verify the veracity of citations.  Having to research fake authority and spend time chasing down that it is in fact not a real case wastes the time and resources of opposing parties and the court.  Going forward, the parties are reminded of their duty under FRCP 11(b)(2) and that citing fake cases drafted by generative AI may violate this rule.  Failure to comply in the future may result in sanctions, such as an order to pay a penalty into court or to the other side, or nonmonetary directives. FRCP 11(c)(4).

## III.    LEAVE TO AMEND COMPLAINT

I should freely give leave to amend a complaint "if it appears at all possible that the plaintiff can correct the defect." *Lopez v. Smith,* 203 F.3d 1122, 1130 (9th Cir. 2000) (quotation omitted).  This rule favoring liberality in amendments to pleadings is particularly important for pro se litigants like Harwell. *Id.* at 1131.  Because it is not clear that amendment would be futile, I grant leave to Harwell to amend her complaint.  She may amend her discrimination claim under

14

the Rehabilitation Act, her retaliation claim under the Rehabilitation Act, and her negligence claim to address the defects I noted above, including the need to identify which defendants she is suing for each claim. She is not given leave to add any additional claims.

## IV. CONCLUSION

I THEREFORE ORDER that the defendants' motion to dismiss and for a more definite statement **(ECF No. 15) is GRANTED in part.** I dismiss Harwell's § 504 discrimination claim against all defendants and dismiss her § 504 retaliation claim against WestCare, Irma Magrdichian, Leo Magrdichian, and Melinda Minor.

I FURTHER ORDER that plaintiff Harwell may file an amended complaint asserting her § 504 discrimination, § 504 retaliation, and negligence claims and specifically stating which defendants she is suing for negligence by April 3, 2026. Failure to file an amended complaint by that date will result in only her § 504 retaliation claim against defendant Rhonda Davisson proceeding.

DATED this 6th day of March, 2026.

_____
ANDREW P. GORDON
CHIEF UNITED STATES DISTRICT JUDGE

15